UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X    Case No.
JOHN DOE,[1]

                       Plaintiff,                                  **COMPLAINT**

         - against -

BLACK DIAMOND CAPITAL MANAGEMENT LLC,     **PLAINTIFF DEMANDS
                                                                          A TRIAL BY JURY**

                       Defendant.
---------------------------------------------------------------------X

Plaintiff, proceeding pseudonymously as "John Doe," by and through his attorneys, Nisar Law Group, P.C., hereby complains of the Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"), the New York State Human Rights Law, New York Executive Law §296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against and denied employment solely due to his disability (Addiction) as well as due to an arrest adjudicated in Plaintiff's favor.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, *et seq.*, and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and

---

[1] Plaintiff has concurrently filed with this Complaint a motion requesting leave to proceed pseudonymously.

1

city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based under his true name with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated January 21, 2022, with respect to the charges of discrimination stated herein.

7. This action is being commenced within ninety (90) days of receipt of said Notice.

## PARTIES

8. At all times relevant, Plaintiff JOHN DOE ("Plaintiff") was and is a resident of the State of New York and New York County.

9. At all times relevant, Defendant BLACK DIAMOND CAPITAL MANAGEMENT LLC ("Defendant") was and is a foreign limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of Connecticut, with its principal place of business located in Stamford, CT.

10. At all times relevant, Defendant owns, operates, and/or maintains offices located in New York City (the "NYC offices").

## MATERIAL FACTS

11. On or about Monday, June 21, 2021, Vennesa Asare (SG Partners' Senior Associate[2]) reached out to Plaintiff to inform him of an open "Associate" position on Defendant's Private Equity team in its NYC offices. Upon information and belief, if hired, Plaintiff

---

[2] SG Partners is a recruiting company.

would have been assigned to work at Defendant's office located at 57th Street and Park Avenue in Manhattan, New York.

12. A few days later, after Plaintiff expressed interest and provided his résumé, Ms. Asare scheduled three rounds of interviews for Plaintiff with Defendant to take place on Monday, June 28, 2021.

13. For the following four weeks, in addition to completing a case study review, Plaintiff completed over ten interviews with Rodney Cohen (Defendant's Head of Private Equity Group), Dana Kupersmith (Defendant's Head of Portfolio Operations and Strategy), James Hogarth (Defendant's Managing Director), Ritesh Tanna (Defendant's Managing Director), Trevor Downy (Defendant's Director), Jessica Yuan (Defendant's Director), Gregory Schunk (Defendant's Associate Director), and Daniel Lesk (Defendant's Associate Director).

14. On or about July 13, 2021, Katie Woods (SG Partners' Vice President) called Plaintiff to inform him that with respect to compensation, Defendant "is thinking mid-200s" (i.e., mid-$200,000's in annual salary) in addition to a potential sign-on bonus.

15. The next day, on or about July 14, 2021, Stefanie Zychowski (SG Partners' Managing Director) called Plaintiff and said:

> Things are heading in a very positive direction with [Defendant]. We don't want to put the cart before the horse, but it's going in a very positive direction... but it seems we're in the home stretch. … They're very excited about your candidacy and think you'd be a great fit.

Plaintiff was pleased to hear this since he also felt that he was a good fit for the position and was confident that he would succeed.

16. Two days later, on July 16, 2021, Ms. Zychowski emailed Plaintiff and wrote:

> The feedback from [Defendant] was really positive. … They are really excited

about your candidacy and it seems like things are headed in a very positive trajectory!

17. Next, on July 20, 2021, Ms. Zychowski called and asked Plaintiff when he would be "willing to give references." When Plaintiff expressed that he was only comfortable doing so "after getting a verbal offer," she responded, "we will let [Defendant] know that they can do references after giving an offer... it's usually a check-the-box scenario, especially when we're this far." Plaintiff purposefully wanted to wait until receiving the offer to notify anyone at his then-current employer because he did not want to prematurely lose one job without having another one definitively lined up.

18. At the conclusion of this interview process, on July 26, 2021, Ms. Kupersmith (Defendant's Head of Portfolio Operations and Strategy) called Plaintiff on the telephone and enthusiastically offered him the position of "Associate."

19. While Plaintiff and Ms. Kupersmith were discussing the specifics of the role and the duties for which he would be responsible, Ms. Kupersmith was very clear that this was only a starting position and there was a lot of room to grow. Ms. Kupersmith told Plaintiff that he should expect to receive an offer letter with an official start date but to anticipate starting around August 30, 2021. Ms. Kupersmith then expressed that "we would be really thrilled for you to join us" and "really hope you accept."

20. After Plaintiff accepted the offer and expressed his enthusiasm to join the team, Ms. Kupersmith ended the conversation by telling him, "We look forward to you coming onboard."

21. The following day, on July 27, 2021, Ms. Zychowski confirmed Defendant's offer via email and asked Plaintiff to "provide your reference from [his then-current employer] at this time."

22. As such, Plaintiff began to notify his superiors at his then-current employer that he was giving their names as references for a new job. In fact, after Plaintiff's supervisor at his then-current employer, Brian Williams, spoke to Ms. Kupersmith, he told Plaintiff:

   Ms. Kupersmith is excited to have you join, says you'd be working with her a lot, and thinks you'd be a great fit.

23. A few days later, Ms. Zychowski advised Plaintiff that Defendant planned to perform a comprehensive background check on him and asked him if he wanted to "disclose anything in advance of the background check."

24. After considerable thought and in the interest of full transparency, Plaintiff scheduled a phone call with Nancy DiDemetrio (Defendant's Human Resources Manager) for Monday, August 2, 2021, for the purpose of discussing his background.

25. Accordingly, on August 2, 2021, Plaintiff voluntarily disclosed his past struggles with addiction and subsequent recovery to Ms. DiDemetrio. Specifically, Plaintiff explained that when he was younger, he had become addicted to opiates after he had some teeth pulled and was prescribed Percocet. He further disclosed that he was arrested for possession in 2014 but that he successfully completed a drug treatment program and was never convicted of any crime. Plaintiff explained that he has been in recovery ever since and had currently been five and one-half years sober. Additionally, Plaintiff mentioned that he attends weekly AA meetings, each lasting about two hours.

26. Plaintiff is very proud of his hard work and dedication to sobriety and never expected that Defendant would use this against him.

27. Nevertheless, only hours later, also on August 2, 2021, Ms. Zychowski sent Plaintiff an email in which she stated:

   We just heard from the [Defendant's] team and unfortunately, they are rescinding

5

their offer.

28. Surprised, Plaintiff immediately called Ms. Zychowski on the telephone during which she explicitly stated:

> In response to your disclosure, [Ms. DiDemetrio] from HR called us and told us that they were rescinding the offer. … She did say that it was in response to your disclosure.

29. Therefore, Defendant admittedly denied Plaintiff the job of "Associate" due to his disability (Addiction) and/or arrest record.

30. Taking into account the reason given to Ms. Zychowski by Ms. DiDemetrio for the rescission of his job offer as well as the close temporal proximity between Plaintiff's disclosure of his addiction history/ arrest record and the rescission, it seems clear that Defendant denied Plaintiff employment due to his history of addiction and recovery, as well as his arrest record (which did not result in a conviction).

31. Plaintiff felt offended, disturbed, and humiliated by the unlawful and discriminatory failure to hire/ rescission of an offer of employment.

32. But for the fact that Plaintiff suffered from Addiction and/or had an arrest record, Defendant would not have denied him employment.

33. Plaintiff's disability (Addiction) is an impairment that substantially limits one or more of his major life activities within the meaning of Section 12102(1)(A) of the ADA.

34. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

35. As a result of Defendant's actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

36. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

37. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

38. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

39. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

40. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

41. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability by denying him employment.

42. As such, Plaintiff has been damaged.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW

43. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

44. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

45. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability by denying him employment due to his disability.

46. As such, Plaintiff has been damaged.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

47. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

48. The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, *__disability__*, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

49. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his disability by denying him employment due to his disability.

50. As such, Plaintiff has been damaged.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION

8

## UNDER THE NEW YORK STATE EXECUTIVE LAW

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

52. New York State Executive Law § 296(16) provides that, "It shall be an unlawful discriminatory practice … for any person, agency, bureau, corporation or association … to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual … in connection with the … employment of … such individual; …"

53. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff and denying him employment solely due to an arrest followed by a termination of that criminal action or proceeding in favor of Plaintiff.

54. As such, Plaintiff has been damaged.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

56. New York City Administrative Code 8-107(11) provides, "It shall be an unlawful discriminatory practice … for any person to: (a) deny employment to any applicant or act adversely upon any employee by reason of an arrest or criminal accusation of such applicant or employee when such denial or adverse action is in violation of subdivision 16 of section 296 of article 15 of the New York state executive law; ..."

57. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff and denying him employment solely due to his arrest followed by a termination

of that criminal action or proceeding in favor of Plaintiff.

58. As such, Plaintiff has been damaged.

## JURY DEMAND

59. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the ADA, the NYSHRL, and the NYCHRL in that Defendant discriminated against Plaintiff on the basis of his disability and/or arrest record by denying Plaintiff employment due to his disability and/or arrest record;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
      April 19, 2022

                                       **NISAR LAW GROUP, P.C.**

                              By: _____
                                       Casey Wolnowski, Esq.

*Attorneys for Plaintiff*
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Ph: (646) 449-7210
Email:cwolnowski@nisarlaw.com

11