

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

           Plaintiff,

-against-

BLACK DIAMOND CAPITAL
MANAGEMENT LLC,

           Defendant.

22-CV-03194 (PGG) (BCM)

**MEMORANDUM AND ORDER**

Now before the Court is the motion of plaintiff "John Doe" for an order granting leave to proceed under a pseudonym, or in the alternative, to seal his complaint. (Dkt. 4.) For the reasons that follow, the motion will be denied.

### Background

Plaintiff previously suffered from an opiate addiction. Compl. (Dkt. 1) ¶ 25. Additionally, he was arrested in 2014, for drug possession, but "successfully completed a drug treatment program and was never convicted of any crime." *Id.* As of April 19, 2022 – the date on which he filed this action – plaintiff had been sober for five and a half years. *Id.*

Plaintiff alleges that on June 21, 2021, he was contacted by an executive search firm, SG Partners, regarding an Associate position on the Private Equity Team at defendant Black Diamond Capital Management (BDCM). Compl. ¶ 11. Over the next four weeks, plaintiff was interviewed by multiple BDCM personnel. *Id.* ¶¶ 12-13. On July 26, 2021, BDCM's Head of Portfolio Operations and Strategy, Dana Kupersmith, called plaintiff and offered him the job, which he accepted. *Id.* ¶ 18. On July 27, 2021, Kupersmith confirmed the offer via email and asked for plaintiff's references. *Id.* ¶ 21.

Plaintiff further alleges that he learned, a few days later, that BDCM planned to do a "comprehensive background check" on him. Compl. ¶ 23. On August 2, 2021, after "considerable

thought," plaintiff voluntarily disclosed his "past struggles with addiction and subsequent recovery," as well as his 2014 arrest, to Nancy DiDemetrio, BDCM's Human Resources Manager. *Id*. ¶¶ 24-25. Later that day, plaintiff was informed by Stefanie Zychowski at SG Partners that BDCM was rescinding the offer. *Id*. ¶ 27. Zychowski told plaintiff that the call had come from DiDemetrio, who told Zychowski that the change of heart was "in response to [his] disclosure." (*Id*. ¶ 28.)

Plaintiff filed a discrimination claim with the Equal Employment Opportunity Commission (EEOC) under his true name. Compl. ¶ 5. He received a right-to-sue letter from the EEOC on January 21, 2022, *id*. ¶ 6, and commenced this action within the next 90 days, *id*. ¶ 7, as required by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a). In this Court, plaintiff alleges claims under the ADA (asserting that his prior addiction constitutes a disability cognizable under 42 U.S.C. § 12102(1)(A)), the New York State Human Rights Law, and the New York City Human Rights Law. Compl. ¶¶ 1, 38-58. He filed his motion for leave to proceed anonymously on April 19, 2022 – the same day he filed his Complaint – along with a supporting memorandum of law (Pl. Mem.) (Dkt. 5), but did not submit any affidavit, declaration, or other evidence.

In his brief, plaintiff argues that litigating under his true name would cause "embarrassment to himself and his family," due to the "societal stigma commonly associated with addiction," and damage to his current and future job prospects, because "[t]he industry in which Plaintiff sought employment (and which he maintains employment currently) is not as large as some may think, and Plaintiff has a legitimate fear that his current and future job prospects may be negatively impacted if his former addiction is revealed." Pl. Mem. at 3. He adds that since he litigated before

the EEOC in his own name, BDCM already knows his true identity, and has been supplied with all of his "filed charge materials" from the EEOC. *Id.* [1]

On July 8, 2022, BDCM filed its answer (Dkt. 19), generally denying plaintiff's claims, and a brief in opposition to the pending motion (Def. Mem.) (Dkt. 20), arguing that plaintiff has failed to overcome the "strong default rule that parties must proceed under their real names." Def. Mem. at 3 (quoting *Doe v. Fedcap Rehab. Servs.*, 2018 WL 2021588, at *3 (S.D.N.Y. April 27, 2018)). Defendant supports its argument with the Declaration of Shawn Matthew Clark, who confirms that plaintiff litigated before the EEOC in his own name and adds that as recently as early 2022, during the parties' pre-litigation negotiations, plaintiff's counsel emailed a draft complaint to Clark that used plaintiff's full name in the caption. Clark Decl. (Dkt. 21) ¶¶ 2-6.

In his reply brief, filed on July 15, 2022, plaintiff adds new contentions, asserting that disclosure of his identity "would cause additional anxiety and stress and would aggravate his illness and possibly cause a relapse," Pl. Reply Mem. (Dkt. 23) at 4, and arguing, among other things, that forcing him to sue publicly would discourage those with addiction and other mental illnesses from pursuing their legal claims, for fear of stigma. *Id.* at 9. Once again, his arguments are unsupported by any evidentiary submission.

Plaintiff's motion is within the scope of my reference (Dkt. 8) and can be disposed pursuant to 28 U.S.C. § 636(b)(1)(A). *See United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (per curiam) ("To the extent *Pilcher*'s *pro se* complaint can be construed to argue that his motion to proceed anonymously was a dispositive motion not properly delegated under § 636(b)(1)(A), we reject that contention.").

---

[1] Although plaintiff requests, in the alternative, "an order sealing the Complaint," *see* Pl. Mem. at 4, his brief does not discuss the standards for sealing judicial documents in this Circuit, nor otherwise flesh out this point.

3

**Analysis**

Ordinarily, "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). This rule, "though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings" and "cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 188-89 (2d Cir. 2008). It also safeguards "the 'public's common law right of access to judicial proceedings' which is a right 'supported by the First Amendment.'" *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 404 (S.D.N.Y. 2019) (quoting *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015)); *see also Pilcher*, 950 F.3d 39, 42 (disclosing the parties in a judicial proceeding "is an important dimension of publicness, as people have a right to know who is using their courts") (internal quotation marks and citations omitted). Accordingly, there is a strong presumption that litigants must proceed under their true names. *See Sealed Plaintiff*, 537 F.3d at 189 (Rule 10(a) is subject to a "limited number of exceptions"); *Rapp v. Fowler*, 537 F. Supp. 3d 521, 526 (S.D.N.Y. 2021) ("Federal court proceedings and records presumptively are public absent a showing of exceptional circumstances"); *Fedcap*, 2018 WL 2021588, at *3 (recognizing the "strong default rule that parties must proceed under their real names").

Courts in this Circuit, faced with a request by a party to proceed anonymously or pseudonymously, balance that party's privacy concerns against "both the public interest in disclosure and any prejudice to the defendant," *Sealed Plaintiff*, 537 F.3d at 189, using a non-exhaustive ten-factor test:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of

> private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of the prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (cleaned up). When performing the analysis, the court "is not required to list each of the factors or use any particular formulation," as long as it is "clear that the court balanced the interests at stake in reaching its conclusion." *Id*. at 191 n.4.

The presumption of publicness also applies to the "judicial documents" before the Court. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). A complaint is a "core" judicial document, *Bronx Conservatory of Music, Inc. v. Kwoka*, 2021 WL 2850632, at *2 (S.D.N.Y. July 8, 2021), subject to a "heavy" presumption of public access. *Id*. (denying motion to seal counterclaim making sexual abuse allegations because that "would keep the public wholly in the dark as to the nature of a claim that . . . is now pending before this Court for resolution"); *see also Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 417 (S.D.N.Y. 2019) (holding that Amended Complaint must be filed in unredacted form, even though it revealed "confidential pricing information," because "the public cannot have confidence in the Court's administration of justice without being able to see the specific allegations underlying the case") (cleaned up).

In this case, plaintiff argues in his moving papers that the first, third, and seventh *Sealed Plaintiff* factors support his request to proceed anonymously. Pl. Mem. at 3. In his reply brief, he expands his contentions, arguing that BDCM will not be prejudiced by his anonymity (sixth factor); that there is no alternative mechanism for protecting his confidentiality (tenth factor); and that it is in the public interest to "allow[] those with a stigmatizing illness to sue." Pl. Reply Mem.

5

at 5-7, 8-9. He also expands his argument as to harm (second and third factors), asserting, for the first time, that his mental health will be adversely affected if he is required to litigate under his own name. *Id*. at 3-5. The Court addresses each issue in turn.

The first factor asks whether the litigation involves matters that are "highly sensitive and of a personal nature." The Court does not doubt that plaintiff considers his history of drug addiction and his 2014 arrest to be both sensitive and personal. However, this case does not involve any of narrow categories that courts in this Circuit have recognized as so "highly sensitive" as to warrant anonymity. *See*, *e.g.*, *Skyline Automobiles*, 375 F. Supp. 3d at 404 (noting that "cases relating to birth control, abortion, homosexuality, welfare rights of illegitimate children, and abandoned families" have been found to be "highly sensitive and of a personal nature," but "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym"); *Michael v. Bloomberg L.P.*, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015) (rejecting request to proceed anonymously in wage and hour case because it was not "the type of unusual case involving matters of a highly sensitive or personal nature – i.e., claims involving sexual orientation, pregnancy, or minor children – in which courts have justified anonymous plaintiffs proceeding pseudonymously").

Tellingly, plaintiff does not cite a single case from within the Second Circuit to support his contention that his past addiction and arrest record qualify as "highly sensitive" under the *Sealed Plaintiff* standard.[2] Nor has the Court located any such authority. *Cf. Delta Airlines*, 310 F.R.D. at

---

[2] Instead, plaintiff relies on *Smith v. United States Office of Pers. Mgmt.*, 2014 U.S. Dist. LEXIS 203893 (E.D. Pa. Jan. 21, 2014), in which a Pennsylvania district court, applying Third Circuit authority, granted plaintiff's *unopposed* motion to proceed anonymously in a case challenging his employer's decision to "deny him benefits for a residential addiction treatment program." In that case, the plaintiff was actively "suffer[ing] from addiction to drugs and alcohol," *id*. at *1, and argued, among other things, that disclosure of his identity, while he was attempting to obtain treatment, would "violate federal and Pennsylvania confidentiality laws, and undermine the policy

6

226 (denying leave to proceed anonymously in case for false arrest and related torts arising out of plaintiff's alleged public intoxication); *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001) (rejecting claim by practicing attorney that she should be permitted to litigate her false arrest claims anonymously to protect her from "reputational injury and embarrassment" should her professional colleagues learn that she was arrested for allegedly refusing to pay her cab fare); *Doe v. Greiner*, 662 F. Supp. 2d 355, 360 (S.D.N.Y. 2009) (denying leave to proceed anonymously in *habeas corpus* case arising out of plaintiff's robbery conviction, as the case did not involve any "matters that are highly sensitive or that implicate issues of privacy"). Plaintiff's fear of embarrassment to himself and his family, while plausible, does not tip the first factor in his favor. It is well-settled that "claims of public humiliation and embarrassment" are "not sufficient grounds for allowing a plaintiff in a civil suit to proceed anonymously." *Delta Airlines*, 310 F.R.D. at 226 (quoting *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y.1996)); *accord Rapp*, 537 F. Supp. 3d at 528 n.38; *Doe v. Weinstein*, 484 F. Supp. 3d 90, 95 (S.D.N.Y. 2020).

Similarly, plaintiff's categorization of his past addiction as a disability, *see* Compl. ¶ 1, does not alter the calculus. Disability is not typically considered "highly sensitive," and in any event must be pleaded – and hence disclosed – in every disability discrimination lawsuit. *See, e.g.*, *Doe v. Trustees of Columbia Univ. in City of New York*, 2021 WL 1253974, at *2-3 (S.D.N.Y. Apr. 1, 2021) (plaintiff with Asperger syndrome, suing for disability discrimination, was not entitled to proceed anonymously); *Vega v. HSBC Sec. (USA) Inc.*, 2019 WL 2357581, at *2 (S.D.N.Y. June 4, 2019) (plaintiff who claimed discrimination based on major depressive disorder

---

interests that support drug addiction treatment." *Id*. at *2. Thus, not only is *Smith* unhelpful to a court which must apply Second Circuit law, it is inapposite on its facts.

and attention deficit disorder was not entitled to proceed under a pseudonym because, although his disability was "personal in nature," it was not "highly sensitive").

The second and third factors ask whether identification of the plaintiff will harm the plaintiff or others. Plaintiff argues that if he litigates this action under his own name he "could face retribution in the industry in which he works," and thus that he has a "legitimate fear" that his job prospects "may be negatively impacted if his former addiction is revealed." Pl. Reply Mem. at 4. He is also "concerned that disclosure of his identity and history of addiction would cause additional anxiety and stress and would aggravate his illness and possibly cause a relapse." *Id*. However, both species of harm are described in only in general, conclusory terms, ungrounded in any specifics (beyond plaintiff's allegations as to his experience at BDCM) and unsupported by any evidence. Consequently, even though the potential harm to his job prospects is the same kind of harm that plaintiff brought this action to remedy, neither the second nor the third factor supports his request for leave to proceed anonymously. *See Skyline Automobiles*, 375 F. Supp. 3d at 406 (rejecting plaintiff's claim that she would suffer emotional harm from the disclosure of her name where she presented "conclusory statements and speculation," but "submit[ted] no evidence of continued harm, nor any evidence of the severity or likelihood of retaliation or any physical or mental harm"); *see also Weinstein*, 484 F. Supp. 3d at 95 ("Without corroboration from medical professionals . . . [plaintiff's] general allegation of potential trauma is 'mere speculation' about a risk of psychological injury that cannot support her motion to proceed under a pseudonym.").[3]

---

[3] In both of the cases that plaintiff cites for the proposition that the risk of psychological harm can justify an anonymity order, the court was presented with multiple affidavits in support of that claim. *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-98 (E.D.N.Y. 2006) (plaintiff submitted his own affidavit and a supporting affidavit from his treating psychiatrist); *Doe v. Bloomberg L.P.*, 200 A.D.3d 410, 410, 154 N.Y.S. 2d 766, 767 (1st Dep't 2021) ("In addition to her own affidavit attesting to the psychological harm it would cause to disclose her name publicly, plaintiff submitted affidavits from her treating psychologist and psychiatrist, both of whom opined that

Even where plaintiffs have presented affidavits, courts frequently reject claims of psychological harm and career damage where the affidavits are vague or speculative. *See, e.g., Rapp* 537 F. Supp. 3d at 528 (rejecting C.D.'s claim that his PTSD would be retriggered by the public disclosure of his name as a plaintiff in a sexual assault case because, among other things, the supporting affidavits from C.D.'s therapist and forensic psychiatrist gave no sense of the "severity" of such a retriggering beyond "conclusory statements that it would entail anxiety, nightmares, and depression"); *Doe v. McLellan*, 2020 WL 7321377, at *2 (E.D.N.Y. Dec. 10, 2020) (rejecting plaintiff's argument that if she were not allowed to proceed anonymously her "career prospects will be destroyed," because, although she submitted an affidavit, it contained only "conclusory statements and speculation"). Here, there is no evidence at all to support plaintiff's contention that pursing this case in his own name "could" damage his job prospects and "would" cause additional anxiety that could "possibly" cause a relapse.

The sixth factor asks whether defendant will be prejudiced if plaintiff is permitted to proceed anonymously. Addressing this factor for the first time on reply, plaintiff reasons that BDCM will suffer no prejudice because it already knows who he is. Pl. Reply Mem. at 5.[4] From a policy standpoint, however, a defendant is always at a disadvantage when sued by an anonymous plaintiff, such that it must "defend [itself] publicly [before a jury] while plaintiff could make [his] accusations from behind a cloak of anonymity." *Delta Airlines*, 310 F.R.D. at 225 (quoting *Shakur*,

---

forcing plaintiff to proceed with the litigation under her legal name would have severe consequences for her mental health.").

[4] Ordinarily, a party may not raise an issue for the first time in his reply brief. *See, e.g., Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (collecting cases), *aff'd*, 288 F. App'x 721 (2d Cir. 2008). However, BDCM addressed all ten *Sealed Plaintiff* factors in its opposition brief, *see* Def. Opp. Mem. at 4-9, entitling plaintiff to respond. *See, e.g., DT v. Somers Cent. Sch. Dist.,* 2009 WL 10706891, at *2 (S.D.N.Y. Feb. 11, 2009) (defendants properly used their reply papers to "respond[] to matters that were raised for the first time in plaintiffs' response papers").

164 F.R.D. at 361). Moreover, if the case goes to trial, a judicial grant of anonymity may imply that plaintiff is more credible, meriting "extra-solicitous treatment," and further "disadvantage Defendants at all stages of litigation, including settlement, discovery, and trial." *Skyline Automobiles*, 375 F. Supp. 3d at 407; *accord Delta Airlines*, 310 F.R.D. at 225; *Rapp*, 537 F. Supp. 3d at 531. At best, therefore, the sixth factor weighs slightly against plaintiff's request to proceed anonymously.

The same is true with regard to the seventh factor, "whether the plaintiff's identity has thus far been kept confidential." *Sealed Plaintiff*, 537 F.3d at 190. It is undisputed that plaintiff litigated under his own name before the EEOC. "Some courts have indicated that if the identity of a plaintiff was previously disclosed in judicial or administrative proceedings, then the request to proceed anonymously should be denied." *Skyline Automobiles*, 375 F. Supp. 3d at 407. However, the EEOC's files are significantly less public than those of this Court, and there is no evidence that plaintiff has contacted the press or otherwise revealed his identity in any fully public forum. *Cf. Rapp*, 537 F. Supp. 3d at 529 (denying request for leave to proceed anonymously where, among other things, plaintiff had already disclosed his identity to a media outlet); *Fedcap*, 2018 WL 2021588, at *3 (vacating prior anonymity order where plaintiff "has already publicly disclosed that they are genderqueer," even though the news story did not "disclose as much as a public lawsuit would"); *Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying motion to proceed under pseudonym where "plaintiff has conceded that the press has known her name for some time").[5] This factor, therefore, also weighs slightly against the relief sought by plaintiff.

---

[5] Defendant notes that one media outlet has published a report about plaintiff's lawsuit against BDCM. *See* Def. Mem. at 9 n.3. But the article – based on the Complaint as filed – did not reveal the plaintiff's name.

In his reply brief, plaintiff contends – again, for the first time – that forcing him to sue publicly would contravene sound public policy because it would effectively discourage those with addiction ("a form of mental illness") from publicly pursuing their legal claims. Pl. Reply Mem. at 9. This argument proves too much. Denying anonymity to a plaintiff who prefers it will inevitably have some chilling effect on the willingness of such a plaintiff to sue at all. This is true not only for plaintiffs with mental illness but also for those who were sexually assaulted, those who were falsely arrested or improperly convicted, those who were discriminated against based on sexual orientation or gender identity, and many other plaintiffs who have suffered harms that can and should be redressed through litigation. There is thus no need for the Court to consider the potential chilling effect on a specific group of potential litigants separately from its application of the *Sealed Plaintiff* balancing test, which already "requires a district court to exercise its discretion in the course of weighing competing interests." 537 F.3d at 190.

In *Rapp*, plaintiff C.D. – who alleged that he was sexually abused, when he was 14 years old, by a well-known adult actor – made a similar plea, arguing "that there is a competing public interest in keeping the identity of those who make sexual assault allegations anonymous so that they are not deterred from vindicating their rights." 537 F. Supp. 3d at 532. Further, C.D. (unlike plaintiff here) advised that he would discontinue his claims, to protect his mental health, if the motion for leave to proceed anonymously were denied. *Id*. As the *Rapp* court explained, however, its job was to balance the interests outlined in *Sealed Plaintiff* (including the plaintiff's), not to make sure that C.D. would persist in his claims. "Though C.D. is correct that the public generally has an interest in protecting those who make sexual assault allegations so that they are not deterred from vindicating their rights, it does not follow that the public has an interest in maintaining the anonymity of *every* person who alleges sexual assault or other misconduct of a highly personal

nature." *Id*. at 533. So too here. The fact that plaintiff's addiction can be characterized as mental illness does not lend additional weight to his motion for leave to proceed anonymously.

Finally, the parties dispute whether there are alternative mechanisms for protecting plaintiff's confidentiality other that permitting him to proceed as "John Doe." *See* Def. Mem. at 9 (proposing a protective order or confidentiality agreement); Pl. Reply Mem at 8-9 ("Once Plaintiff's identity is disclosed to the public, there is no way to thereafter undo that disclosure[.]"). The Court concludes that they are both right. While a protective order or confidentiality agreement can protect against disclosure of any particularly sensitive details concerning plaintiff's addiction or his 2014 arrest, those mechanisms will not prevent the public from learning that it was plaintiff – not an anonymous litigant – who was addicted and arrested.[6] If plaintiff had otherwise made a colorable case for blanket confidentiality, therefore, the tenth *Sealed Plaintiff* factor would add some weight in his favor. But where, as here, the plaintiff has failed to show that he is entitled to shield his identity, the fact that there are no alternative mechanisms for doing so adds little if anything to the calculus.

## Conclusion

After carefully considering all of the *Sealed Plaintiff* factors and the underlying interests of the parties and the public, the Court concludes that plaintiff has not overcome the "presumption in favor of public access to court proceedings and records." *Pilcher*, 950 F.3d at 43. Consequently, his motion (Dkt. 4) for leave to proceed pseudonymously or, in the alternative, to seal his Complaint, is DENIED. No later than **April 10, 2023,** plaintiff shall file an amended complaint, using his full name, on the public docket.

---

[6] Nor, for that matter, would plaintiff benefit at this point from sealing his Complaint, because other documents in the Court's file (including the Answer, and now this Memorandum and Order) reveal the substance of his claim.

This ruling is without prejudice to plaintiff's right to apply for narrower sealing or redaction orders, as appropriate, regarding any particularly sensitive documents or portions thereof.

Dated:  New York, New York
March 27, 2023

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**